Maurice B. VerStandig, Esq.
Bar No. MD18071
Christianna A. Cathcart, Esq.
Bar No. ND0008
The VerStandig Law Firm, LLC
9812 Falls Road
#114-160
Potomac, Maryland 20854
Phone: (202) 991-1101
mac@mbvesq.com
christianna@dcbankruptcy.com
*Proposed Counsel for the Debtors*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re: | ) | Case No. 26-464-ELG |
| | ) | (Chapter 11) |
| Synergy Reorg, LLC.[1] | ) | |
| | ) | |
| Debtors. | ) | Joint Administration Motion Pending |

**MOTION FOR LEAVE TO USE CASH COLLATERAL**

Come now Synergy Reorg, LLC.; Synergy CHC Corp.; Synergy CHC Inc.; Hand MD Corp.; Synergy CHC Mexico; and NomadChoice Pty, Ltd. (collectively, the "Debtors"), by and through undersigned proposed counsel, pursuant to sections 363 of title 11 of the United States Code and Federal Rules of Bankruptcy Procedure 6003 and 6004, and move this Honorable Court for leave to (i) use the cash collateral of one or more creditors, post-petition; and (ii) provide adequate protection to those creditors whose cash collateral is so utilized. In support thereof, the Debtors state as follows:

[1] The Debtors in these cases are Synergy Reorg, LLC.; Synergy CHC Corp.; Synergy CHC Inc.; Hand MD Corp.; Synergy CHC Mexico; and NomadChoice Pty, Ltd.

## I. Introduction

Though the Debtors now look to chapter 11 as an efficient mechanism to liquidate in an orderly fashion, the entities remain active corporate actors with product on store shelves the world over. Maintaining that posture—and preserving the pre-petition status quo ante extant before a secured creditor crossed certain seemingly-tortious lines—is imperative to maximizing value for creditors and stakeholders. Not only will post-petition sales furnish monies that may be used to pay claims but, more important and more basically, the Debtors are worth far more as going concerns than they would likely fetch as entities relegated to the past tense. And there is thusly an abiding need to continue operations while in chapter 11 which, in turn, will require the utilization of at least one creditor's cash collateral.

ACP Agency, LLC ("ACP") holds a pre-petition lien that—solely for purposes of the instant motion, and without prejudice to future litigation in this case—the Debtors suggest to encumber seemingly all lienable assets of Synergy CHC Corp. ("SCC"). ACP has proven particularly aggressive in endeavoring to enforce this lien, too; pre-petition, ACP did not merely try to seize certain bank accounts of SCC but, too, contacted at least one national vendor of the Debtors' products with instructions to remit receivables to ACP and not to SCC. *See* Remittance Letter, attached hereto as Exhibit A in redacted form.

To be sure, the actions of ACP, pre-petition, have been so wantonly unhinged as to be almost assuredly tortious. Contacting a national merchant with instructions to reroute payments is the sort of thing a merchant cash advance entity ("MCA") might undertake through the cynical lens of having "purchased" receivables; absent levels of care not present here, these are not the good faith actions of a creditor holding a UCC lien and looking to participate in a lawful UCC sale. And, as a result of such, at least SCC—if not all of the Debtors—anticipate(s) bringing suit

against ACP for, *inter alia*, tortious interference with contract and tortious interference with prospective advantage.

Worsening matters, as of the filing of this motion, ACP is yet to release its freeze on the Debtors' bank accounts, despite having been notified of SCC's filing mere minutes after it occurred. Indeed, ACP's Canadian counsel has confirmed receipt of a suggestion of bankruptcy from the Debtors' proposed counsel, and indicated such has been passed along to American counsel, but absolutely no communications have been received from American counsel and the bank accounts remain frozen. So ACP stands likely to be sued, too, for (i) turnover; and (ii) a willful violation of the automatic stay.

Still, ACP does hold a lien that seems to encumber the Debtors' inventory. And ACP does appear to be a counterparty to one or more account control agreements that encumber *some* (albeit, and quite critically, not all) of the Debtors' pre-petition bank accounts. The Debtors will need the use of their inventory and the proceeds thereof as they navigate these cases, just as they will need the use of their bank accounts. And they thusly now bring this motion for use of cash collateral, proposing to furnish ACP with a replacement lien to the extent of any diminution of said collateral during the pendency of these cases (if ACP is ultimately found to have a valid lien that has not been stripped or equitably subordinated, or a valid claim that is not reduced by counterclaims).

## II. Standard

The Bankruptcy Code expressly contemplates the utilization of cash collateral by debtors-in-possession:

> Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest.

11 U.S.C. § 363(e).

Moreover, the Federal Rule of Bankruptcy Procedure allow for relief, such as that sought herein, being afforded on an emergency basis upon the commencement of a case, permitting orders to be entered during the first 21 days of a given case, "to the extent that relief is necessary to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003.

**III. Argument: Cash Collateral Utilization Should be Permitted**

The Debtors need to operate to maximize a return to all creditors (including ACP, to the extent of any claim that may be ultimately allowed). That requires money. And the expenditure of certain monies, in turn, requires the use of cash collateral both in the form of extant bank account balances and in the form of future proceeds of the sale of pre-petition inventory. Since such is ultimately to the benefit of ACP, it is genuinely unclear that any adequate protection is needed *sub judice*. Out of an abundance of caution, however, the Debtors nonetheless propose ACP be given a replacement lien on post-petition revenues and monies (but *not* chapter 5 claims or the proceeds thereof) to the extent of any diminution of the cash collateral lien posture at the time of these cases' filing.

As noted by the United States Court of Appeals for the Eleventh Circuit, "[a]dequate protection is a means of preserving a creditor's interest in secured collateral subject to post-petition use by the debtor." *In re Carpet Center Leasing Co., Inc.*, 991 F.2d 682, 686 (11th Cir. 1993). What constitutes adequate protection is determined on a case-by-case basis. *See In re O'Connor*, 808 F.2d 1393, 1396-97 (10th Cir. 1987); *In re Martin*, 761 F.2d 472 (8th Cir. 1985).

Simply stated, adequate protection is necessary only to the extent the use of the creditor's collateral will result in a decrease in "the value of such entity's interest in such property." 11 U.S.C. §§ 361, 363(e). *See also United Savings Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*,

484 U.S. 365, 370-73 (1988) (the "interest in property" entitled to protection is "the value of the collateral" securing the claim).

Section 361 of the Bankruptcy Code provides that adequate protection may be provided by (i) "requiring the trustee to make a cash payment or periodic cash payments to such entity, to the extent that the … use … under section 363 of this title … results in a decrease in the value of such entity's interest in such property," (ii) "providing … an additional or replacement lien to the extent that such … use … results in a decrease in the value of such entity's interest in such property," or (iii) "granting such other relief . . . as will result in the realization by [an] entity of the indubitable equivalent of [the] entity's interest in such property." 11 U.S.C. § 361. *See also*, *In re JKJ Chevrolet, Inc*., 190 B.R. 542, 545–46 (Bankr. E.D. Va. 1995), subsequently aff'd, 117 F.3d 1413 (4th Cir. 1997) ("Section 361 of the Code provides three non-exclusive means of providing adequate protection. These alternatives include requiring the debtor to make a cash payment or periodic cash payments to the extent of a decrease in the value of the property. Alternatively, the debtor may provide an additional or replacement lien to the extent of a decrease in the value of the property. Lastly, adequate protection may be provided by granting other relief that will result in the indubitable equivalent of the interest in the property.") (citing 11 U.S.C. § 361(3)).

Here, a review of UCC records in Nevada (SCC's state of incorporation) reveals there to be only one active lien on SCC's assets:

| Creditor | Collateral | Filing Number | Filing Date | Termination Number | Termination Date |
|---|---|---|---|---|---|
| Knight Therapeutics Int'l | "All assets of the debtor now or hereinafter acquired. . ." | 2022251439-6 | July 7, 2022 | 2025478237-8 | May 30, 2025 |
| Knight Therapeutics Int'l | "All assets of the debtor now or hereinafter acquired. . ." | 2022251440-2 | July 7, 2022 | 2025478239-6 | May 30, 2025 |

| | | | | | |
|---|---|---|---|---|---|
| Middesk, Inc. as Representative | "All assets of the debtor, whether now owned or hereafter acquired or arising, wheresoever located, and all proceeds thereof." | 2024402520-9 | May 1, 2024 | 2025480532-6 | June 5, 2025 |
| ACP Agency, LLC, as Collateral Agent | "All assets of the debtor of every kind and nature, whether now owned or hereafter acquired and wherever located, and all proceeds and products thereof." | 2025478218-3 | May 30, 2025 | | |

*See* Nevada UCC Certified Search Results, attached hereto as Exhibit B.

Additionally, as will be more fully explained through the testimony of Lauren Berret, the Debtors' chief restructuring officer, at first day hearings, ACP *does* hold an account control agreement on certain depository accounts and has exercised its rights thereunder pre-petition. While such has now morphed from being an aggressive collection technique to a turnover and stay violation, such also means ACP's lien is properly perfected against certain (albeit not all) depository accounts and the funds therein. *See* Nev. Rev. Stat. § 104.9314.

Of note, one or more of the Debtors are also parties to agreements with a merchant cash advance ("MCA") entity. However, the aforementioned search of Nevada UCC records does not reveal any liens in favor of this entity. And the Debtors thusly posit any MCA obligations to be unsecured or, at minimum, improperly perfected. *See* Nev. Rev. Stat. § 104.9309.

In light of the nature of ACP's lien, the Debtors propose that cash collateral utilization be permitted by granting rolling replacement liens to any creditor(s) ultimately found to have a validly perfected interest therein. And, as added protection, the Debtors will commit to abiding by the contours of a 13-week rolling budget, *see* Budget, attached hereto as Exhibit C, not to be exceeded in the aggregate by 10% in any two week period except to the extent that increased revenues invite the incursion of correlatively increased expenses in any given measuring period.

## IV. Conclusion

WHEREFORE, the Debtors respectfully pray this Honorable Court (i) permit the Debtors to use cash collateral; (ii) grant rolling replacement liens to secured creditors whose cash collateral is so utilized; and (iii) afford such other and further relief.

Respectfully submitted,

Dated: September 7, 2026 By: /s/ Maurice B. VerStandig

Maurice B. VerStandig, Esq.
Bar No. MD18071
The VerStandig Law Firm, LLC
9812 Falls Road
#114-160
Potomac, Maryland 20854
Phone: (202) 991-1101
mac@mbvesq.com

Christianna A. Cathcart, Esq.
Bar No. ND0008
The VerStandig Law Firm, LLC
9812 Falls Road
#114-160
Potomac, Maryland 20854
Phone: (202) 655-2066
christianna@dcbankruptcy.com
*Proposed Counsel for the Debtors*

*[Certificate of Service on Following Page]*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 7th day of September, 2026, a copy of the foregoing was served electronically upon filing via the ECF system, with copies being sent to all parties receiving electronic notice herein.

/s/ Maurice B. VerStandig
Maurice B. VerStandig