Maurice B. VerStandig, Esq.
Bar No. MD18071
Christianna A. Cathcart, Esq.
Bar No. ND0008
The VerStandig Law Firm, LLC
9812 Falls Road
#114-160
Potomac, Maryland 20854
Phone: (202) 991-1101
mac@mbvesq.com
christianna@dcbankruptcy.com
*Proposed Counsel for the Debtors*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re: | ) | Case No. 26-464-ELG |
| | ) | (Chapter 11) |
| Synergy Reorg, LLC.[1] | ) | |
| | ) | |
| Debtors. | ) | Joint Administration Motion Pending |

**MOTION TO UTILIZE FDIC-INSURED DEPOSITORY ACCOUNTS**

Come now Synergy Reorg, LLC.; Synergy CHC Corp.; Synergy CHC Inc.; Hand MD Corp.; Synergy CHC Mexico; and NomadChoice Pty, Ltd. (collectively, the "Debtors"), by and through undersigned proposed counsel, pursuant to Federal Rule of Bankruptcy Procedure 6004, and move this Honorable Court for leave to open and/or maintain depository accounts at institutions that are insured by the Federal Deposit Insurance Corporation (the "FDIC") but that are not necessarily participants in the debtor-in-possession bank account ("DIP Account") program, and in support thereof state as follows:

[1] The Debtors in these cases are Synergy Reorg, LLC.; Synergy CHC Corp.; Synergy CHC Inc.; Hand MD Corp.; Synergy CHC Mexico; and NomadChoice Pty, Ltd.

## I. Introduction

The Debtors maintain their bank accounts at various institutions, including TD Bank and Banc of California. Each such bank is an FDIC-insured institution offering depository services one or more of the Debtors find palatable and commercially reasonable in nature. By this Motion, the Debtors seek authority to continue using their existing accounts—and to open any new FDIC-insured accounts—in the ordinary course, rather than closing extant accounts and opening new debtor-in-possession accounts ("DIP Accounts").

The Debtors are aware that the Operating Guidelines and Reporting Requirements of the United States Trustee (the "UST Guidelines") call for all pre-petition accounts to be closed and new DIP Accounts opened. But neither TD Bank nor Banc of California are approved DIP Account institutions in this region, and rigid adherence to that requirement would burden these estates to no commensurate end. Permitting the Debtors to maintain traditional FDIC-insured accounts, by contrast, accords with both prevailing notions of equity and a plain-language reading of title 11 of the United States Code (the "Bankruptcy Code").

To be sure, myriad obligations attend the maintenance of a chapter 11 proceeding in this Honorable Court, many of them enforced by the United States Trustee (the "UST"). The Debtors have every intention of complying with each rigor correlative to their cases—the filing of periodic operating reports, attendance at the initial debtor interview, the ongoing provision of information when requested by the UST, and the rest—and they do not seek to shirk any such obligations. But constraining the Debtors' banking options would serve little demonstrable purpose *sub judice*, particularly where the funds on deposit are insured to the limits afforded by the FDIC.

For these reasons, and as extrapolated upon *infra*, the Debtors respectfully ask they be permitted to use traditional depository accounts.

## II. Argument: Traditional Depository Accounts are Adequately Insured

For self-evident reasons, the Bankruptcy Code requires debtors' funds be held in properly insured depository and investment havens. While placing monies in a DIP Account no doubt serves to achieve these ends, DIP Accounts lack pragmatism in certain cases. This is one such case.

The Bankruptcy Code does not actually mandate that debtors open new bank accounts upon filing petitions for relief, instead requiring only:

> **Except with respect to a deposit or investment that is insured or guaranteed by the United States or by a department, agency, or instrumentality of the United States** or backed by the full faith and credit of the United States, the trustee shall require from an entity with which such money is deposited or invested—
>
> (1) a bond—
>
> (A) in favor of the United States;
>
> (B) secured by the undertaking of a corporate surety approved by the United States trustee for the district in which the case is pending; and
>
> (C) conditioned on—
>
> (i) a proper accounting for all money so deposited or invested and for any return on such money;
>
> (ii) prompt repayment of such money and return; and
>
> (iii) faithful performance of duties as a depository; or
>
> (2) the deposit of securities of the kind specified in section 9303 of title 31;
>
> unless the court for cause orders otherwise…

11 U.S.C. § 345(b) (emphasis added).

Under section 345 of the Bankruptcy Code, a regime is created through which DIP Accounts can be established at banks that post the requisite bond and agree to participate in the subject program. The regime, however, is plainly only applicable "[e]xcept with respect to a deposit or investment that is insured or guaranteed by the United States or by a department, agency, or instrumentality of the United States…" 11 U.S.C. § 345(b). And where the FDIC insures a bank,

the institution may be understood to have the protections of "a department, agency, or instrumentality of the United States." *See, e.g.*, 12 U.S.C. § 1811(a) ("There is hereby established a Federal Deposit Insurance Corporation … which shall insure, as hereinafter provided, the deposits of all banks and savings associations which are entitled to the benefits of insurance under this chapter, and which shall have the powers hereinafter granted").

The UST Guidelines, however, go a step further, requiring, *inter alia*, "[t]he debtor must immediately close pre-petition bank accounts and open new 'debtor in possession' bank accounts. All receipts must flow through the debtor in possession account(s). All disbursements should be by check." UST Guidelines, p. 3, § II(A)(1).

The Supreme Court has made clear that even when a federal statute is ambiguous (something that is not the case here), the interpretation thereof by the Executive Branch is *not* to be afforded any deference or weight by the Judicial Branch:

> In an agency case as in any other, though, even if some judges might (or might not) consider the statute ambiguous, there is a best reading all the same—'the reading the court would have reached' if no agency were involved. It therefore makes no sense to speak of a 'permissible' interpretation that is not the one the court, after applying all relevant interpretive tools, concludes is best. In the business of statutory interpretation, if it is not the best, it is not permissible.

*Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 400 (2024) (quoting *Chevron U. S. A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U. S. 837, 843 n.11 (1984)).

Indeed, so-called "*Chevron* deference" is no longer the law of the land post-*Loper Bright Enterprises*. Whereas agency interpretations were once afforded substantial weight in resolving ambiguities lingering throughout the United States Code and other federal statutory enactments, the high court has now made abundantly clear that the affording of such deference amounts to an impermissible encroachment on the Judicial Branch.

Tellingly, however, the demise of *Chevron* deference is also likely immaterial to the issue *sub judice* insofar as—at least on this point—the Bankruptcy Code is not particularly ambiguous. *See, e.g.*, *King v. Burwell*, 759 F.3d 358, 367 (4th Cir. 2014) (noting *Chevron* deference to only be applicable where a statute's "plain meaning" is "susceptible to multiple interpretations"); *Halverson v. Slater*, 129 F.3d 180, 184 (D.C. Cir. 1997) (noting that before affording *Chevron* deference, "the court must first exhaust the traditional tools of statutory construction to determine whether Congress has spoken to the precise question at issue.") (quoting *Natural Resources Defense Council, Inc. v. Browner*, 57 F.3d 1122, 1125 (D.C. Cir. 1995)). It is genuinely difficult to see how the operative language of section 345—allowing debtors to keep monies deposited so long as the deposits are "insured or guaranteed by the United States or by a department, agency, or instrumentality of the United States or backed by the full faith and credit of the United States," 11 U.S.C. § 345(b)—is "susceptible to multiple interpretations," *King*, 759. F.3d at 367.

The current extent of FDIC insurance on each deposit is $250,000.00. 12 U.S.C. § 1821(a)(1)(E). Should any Debtor obtain funds in excess of the insured threshold, it will open a new account at a new institution, so as to ensure no monies lack appropriate federal insurance. But, for the time being, the Debtors believe utilization of traditional depository accounts to offer adequate security to estate funds, and accordingly respectfully seek leave to maintain traditional banking relationships.

**III. Conclusion**

WHEREFORE, the Debtors respectfully prays this Honorable Court (i) permit the Debtors to utilize non-DIP Accounts at FDIC-insured institutions, provided no single Debtor have more than $245,000.00 on deposit at any one institution at any one time; and (ii) afford such other and further relief.

Respectfully submitted,

Dated: September 7, 2026 By: /s/ Maurice B. VerStandig

Maurice B. VerStandig, Esq.
Bar No. MD18071
The VerStandig Law Firm, LLC
9812 Falls Road
#114-160
Potomac, Maryland 20854
Phone: (202) 991-1101
mac@mbvesq.com

Christianna A. Cathcart, Esq.
Bar No. ND0008
The VerStandig Law Firm, LLC
9812 Falls Road
#114-160
Potomac, Maryland 20854
Phone: (202) 655-2066
christianna@dcbankruptcy.com
*Proposed Counsel for the Debtors*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 7th day of September, 2026, a copy of the foregoing was served electronically upon filing via the ECF system, with copies being sent to all parties receiving electronic notice herein.

/s/ Maurice B. VerStandig
Maurice B. VerStandig